[No. 2,750.]

## HENRY REEVE v. J. M. KENNEDY AND D. M. DELMAS.

PURCHASER AT SHERIFF'S SALE.—In a complaint to set aside an execution sale, made under a judgment, on account of matters extrinsic to the judgment, at which the purchaser was not a party to the judgment, if there is no averment that the purchaser had notice of such extrinsic facts, he will be deemed a purchaser without notice.

INNOCENT PURCHASER AT SHERIFF'S SALE.—A purchaser for value at a judicial sale, who is not the judgment creditor, without notice of extrinsic facts which are relied upon to impeach the judgment under which the sale was made, is not affected by such facts.

IDEM.—A purchaser at a judicial sale is bound to inquire at his peril, whether it sufficiently appears on the face of the record that the Court had jurisdiction to render the judgment, and whether there is a valid execution; but beyond that he need not go, and subject to such inquiry his purchase will be protected, even though the judgment is afterwards reversed for error.

TITLE ACQUIRED AT JUDICIAL SALE.—A title acquired at a judicial sale by a bona fide purchaser, without notice, cannot be overthrown by subsequent proof that the judgment was obtained by fraud, or that the record which showed due service on the defendant was in fact false.

EVIDENCE TO CONTRADICT RECORD.—In an action to impeach the title to property acquired by an innocent purchaser at judicial sale, the plaintiff cannot contradict the record, by proof that there was in fact no service of summons, or that the judgment was obtained by fraud.

COLLATERAL ATTACK ON JUDGMENT.—Against a stranger who is an inno-
cent purchaser at a judicial sale, without notice, the judgment is no more
open to attack than if offered in evidence in a collateral action.

VOID JUDGMENT OR EXECUTION.—A judgment is not void because it is for
a larger sum than the proofs justify, nor is an execution void because it is
for a larger sum than the judgment authorized.

SALE UNDER ERRONEOUS JUDGMENT.—If a judgment for a tax enforces a
lien on real estate, not only for the tax on the land, but also for the owner's
tax on personal property, and the latter is erroneous, a sale made under the
judgment is not void, nor can it for that reason be impeached in an action
brought to set it aside.

LIS PENDENS.—In an action to enforce the lien of a tax by a sale of the
property, it is not necessary to file a *lis pendens.*

LIEN OF TAX.—The lien of a tax extends back to the assessment, and the
assessment creates a lien which is not extinguished until the tax is paid.

TAXES MATTERS OF PUBLIC RECORD.—The assessment of taxes and the
lien which it creates, are matters of public record, of which all purchasers
are bound to take notice, and the purchaser of land is bound at his peril to
see that taxes have been paid.

APPEAL from the District Court of the Third Judicial Dis-
trict, Santa Clara County.

The complaint averred that the plaintiff owned a tract of
land containing eight acres; that he purchased it of C. F.
M. Dinnicke, on the 6th day of February, 1868; that prior
to said sixth day of February, and while said Dinnicke
owned the land, there was assessed to said Dinnicke a tax on
said land and personal property, as State and county tax,
sixty-eight dollars and fifty-one cents—of which sum, sixty-
two dollars and forty cents were levied on the land; that on
the 3d day of January, 1868, an action was commenced
against said Dinnicke and the land and improvements, for
the collection of said tax; that the Auditor failed to post
notices that the delinquent tax list had been deposited with
the District Attorney, and also failed to publish notice of
such fact, nor did he file any affidavit of such posting or
publishing; and that the Sheriff did not make any service
of summons, either by posting a copy on the Court House
door or delivering a copy to the person in possession of the

land, or by serving on Dinnicke; that the District Court gave judgment against Dinnicke and the land and improvements. The judgment and summons and return were attached to the complaint as an exhibit, and the return of the Sheriff showed service of the summons on the 24th day of October, 1868, by posting a copy on the premises. The return showed that no service was made on Dinnicke. The complaint averred that the Auditor and Sheriff failed to post and make service, for the purpose of defrauding Dinnicke and those who might succeed to his interest in the premises. An execution on the judgment was issued and delivered to the Sheriff, on the 28th day of May, 1869, and the Sheriff sold the land to J. M. Kennedy, on the 3d day of July, 1869, and on the 6th day of January, 1870, executed to him a deed, and that the plaintiff did not know that the taxes were delinquent, or had not been paid, until January 15th, 1870, and did not know that the taxes were a lien on the property, and did not know of the pendency of any action.

There was prayer that the deed to Kennedy be canceled and declared null and void, etc. No *lis pendens* was filed.

The defendant Delmas, who had acquired an interest in the property under the tax sale, demurred to the complaint, and the Court sustained the demurrer, and dismissed the complaint for want of equity. The plaintiff appealed.

The other facts are stated in the opinion.

*Moore & Laine,* and *S. F. Leib,* for Appellant.

In order to give a Court jurisdiction there must be service of process in some way. (Blackwell on Tax Titles, 211, 3d ed.)

If a judgment is void a sale thereunder is void. (*Smith* v. *The State,* 13 S. & M. 140; *Hastings* v. *Burning Moscow,* 2 Nev. 105; *Webster* v. *Reid,* 11 Howard, 432.)

Proceedings to enforce liens or proceedings *in rem* form no

exception to the general rule. The only difference is in the mode of giving notice.

It is insisted that the records of Courts of superior jurisdiction import absolute verity, and that their judgments cannot be impeached unless want of jurisdiction appears upon their face. The cases of *Hahn* v. *Kelly*, 34 Cal. 402, and *Reily* v. *Lancaster*, 39 Cal. 354, are relied on to support this doctrine. The last named case is but a reiteration of the leading case of *Hahn* v. *Kelly*, supra, and need not be specially considered. The case of *Hahn* v. *Kelly* has, in our judgment, been by the bar and the lower Courts much misapprehended. The Judges who pronounced that opinion were extremely careful to limit the doctrine as above set forth to the case of a collateral attack; and further, the Court was equally careful to define what was meant by such an attack, viz: where the judgment was offered as evidence in some other proceeding. The Court, in that case, did hold that in a collateral attack, even if the judgment roll, outside of the judgment itself, showed a want of service, and the judgment recited service that it would be conclusively presumed that a proper service had in fact been made, but proof of it had not found its way into the judgment roll or had been lost therefrom. But the Judge who pronounced the opinion and decision of the Court in that case says in the very outset that "any judgment of any Court is absolutely void if it appear that there was a want of jurisdiction in either respect." (34 Cal. 402.)

Again, at page four hundred and twenty-seven, it is said by Justice Sawyer that "if the record in fact does not speak the truth, the only remedy of the party is to attack it directly on appeal, or in the Court of which it is a record, if under the circumstances it can be there corrected, or by some direct proceeding known to the law to vacate it."

We think this is a direct attack on the judgment. The time for appeal had passed before the plaintiff had any

knowledge of the tax or tax suit.  (Story's Eq. Pl., Secs. 426–428; *Sanford* v. *Head*, 6 Cal. 298; *Bryant* v. *Williams*, 21 Iowa, 329; *Hawley* v. *Blackman*, 20 Iowa, 188.)   The plaintiff was an innocent purchaser.

The twenty-seventh section of the Civil Practice Act provides that in an action affecting the title to real property there must be a *lis pendens* filed to charge a purchaser *pendente lite* with constructive notice; that he is to be charged with such notice only after the *lis pendens* is actually filed.

A tax proceeding is one affecting title to real property, and of all actions known to our system, one most needing a notice to the outside world, as the proceedings are to a great extent summary, and valuable estates are liable to be sold for very small sums of money.   In this case property worth from five thousand dollars to six thousand dollars has been sold for less than one hundred dollars taxes.  (*Bensley* v. *Mountain Lake Water Company*, 13 Cal. 319; *Richardson* v. *White*, 18 Cal. 102.)   The Supreme Court of Michigan, in *Clark* v. *Crane*, 5 Mich. 154, says that "what the law requires to be done for the protection of the taxpayer is mandatory, and cannot be regarded as directory merely."  A similar rule has been recognized in Illinois and other States. (*Marsh* v. *Chesnut*, 14 Ill. 223; *Wheeler* v. *Chicago*, 24 Ill. 108.)   The rule is stated by Chief Justice Shaw, in *Terry* v. *Milburry*, 21 Pick. 67.   See, also, Cooley on Constitutional Limitations, pp. 74 to 78, and notes.

*D. M. Delmas*, for Respondent.

The judgment is not void.   It is valid until set aside or reversed.   This proposition would seem too plain to need argument or authority.   The judgment in this case is that of a superior Court.   It emanates from the highest tribunal of original jurisdiction known in this State.   Such judgments are never void unless they are so upon their face.   When not

void upon their face they are at most only erroneous; but,
notwithstanding the error, they are absolutely binding, and
so remain until set aside or reversed. (*Crepps* v. *Durden,* 1
Smith L. Cases, Am. note, 998.)   A judgment is never void
for want of jurisdiction unless the want of jurisdiction ap-
pears affirmatively in the record. (*Hahn* v. *Kelly,* 34 Cal.;
*Grignon's Lessee* v. *Astor,* 2 How. 319; *Voorhees* v. *U. S.
Bank,* 10 Peters, 449.)   The District Court, which foreclosed
the tax lien, expressly found, in its decree, that summons in
that case was served as required by law.   Equity has no
jurisdiction to set aside that decree on the ground that it
was erroneous, or unsupported by the evidence on which it
was based, or that it can be shown by extensive proof that
the summons had not in fact been served.   The District
Court, having jurisdiction of the subject matter of the
action, was competent and had authority to decide whether
its jurisdiction had attached upon the parties before it.
When it had decided that question, its judgment upon that
matter was binding and conclusive. (*Sheldon* v. *Wright,* 1
Seld. 497, 514; *Borden* v. *State,* 6 English, 519, 544; *Cox* v.
*Thomas,* 9 Gratt. 323; *Richards* v. *Skiff,* 8 Ohio St., 446,
453; *The Evansville R. R. Co.* v. *Evansville,* 15 Ind. 395, 421.

The estoppel of a judgment is absolutely conclusive on
all matters which could and ought to have been considered
and passed upon in rendering it, and cannot be disproved or
defeated, either at law or in equity, by proof that the law
was mistaken by the Court, or misapprehended and misap-
plied by the jury. (*Vaughn* v. *Johnson,* 1 Stock. Ch. 173;
2 Smith Lead. Cases, 673; *Burgess* v. *Lovengood,* 2 Jones
Eq. 457; *De Riemer* v. *Chattillon,* 4 Johns. Ch. 85.)

Courts of equity do not interpose to correct the errors or
irregularities of Courts of law. (*Gregory* v. *Ford,* 14 Cal.
138, 142.)

No case for equitable cognizance is made out by the bill,
because: First—It is not alleged that Dinnicke, the personal

defendant in the tax suit, did not have notice of the action. Second—It is conceded that the taxes for which the judgment was rendered were, at the time, legally due and owing by the defendants in that action. Third—The defendants herein are bona fide purchasers under the judgment.

Even where a person is allowed to file a bill to be relieved against a judgment against him, on the ground that he has a valid defense to the action and had no opportunity to defend, the bill must not only show that he was not legally notified, but also, that he had, in fact, no knowledge of the proceedings. (1 Smith L. C. 1023; *Cowan* v. *Bradwood*, 1 M. & G. 882; *Reynolds* v. *Fenton*, 3 C. B. 187.)

The defendants are bona fide purchasers at the Sheriff's sale. Against such purchasers equity never lends its aid.

The maxim is as old as chancery itself. Since the rule was authoritatively thus laid down, two hundred years ago, in *Bassett* v. *Nosworthy*, Rep. Temp. Finch, 102, it may safely be asserted that no departure from it has ever been sanctioned by the decision of any respectable tribunal. (Story's Eq. Pl. Sec. 604; Lead. Cases in Eq., Vol. 2, pp. 72, 73; *Simms* v. *Slocum*, 3 Cranch. 300; *Gray* v. *Brignardello*, 1 Wallace, 627; *Parker's Heirs* v. *Anderson*, 5 T. B. Monroe, 445.)

By the Court, CROCKETT, J.:

It is not averred in the complaint that the defendant Kennedy had any actual notice of the extrinsic facts relied upon to impeach the judgment on which the execution issued, under which he purchased the property in controversy. He is, therefore, to be deemed a purchaser without notice of these facts. The plaintiff assails the judgment, and claims that it is void on two grounds, viz: First, by reason of facts appearing on the face of the record which, it is alleged, show

that the Court had no jurisdiction to render the judgment; second, because there was in fact no service of the summons, and no appearance by the defendant; and also, because the judgment was fraudulently obtained. The last point will be first considered. The defendant being a purchaser for value, at a judicial sale, without notice of the extrinsic facts, which are relied upon to impeach the judgment, cannot be affected thereby. No principle is better settled than that a purchaser at a judicial sale, without notice, under proceedings regular on their face, and had in a Court of competent jurisdiction, is not affected by any mere error of the Court, for which the judgment might be reversed on appeal, nor for any secret vice in the judgment, not appearing on the face of the record, and which can be made to appear only by the production of extrinsic evidence. He is bound at his peril to inquire whether it sufficiently appears on the face of the record that the Court had jurisdiction to render the judgment, and whether there is a valid execution. But nothing more is required of him. Unless the plaintiff in the action be also the purchaser at the sale, the latter will not be affected by any mere error of the Court, even though the judgment be afterwards reversed for such error; nor can his rights be impaired by any secret vice in the proceedings, resulting from fraud or other similar cause, of which he had no notice. As between the parties to the action, a judgment fraudulently obtained will be set aside and held for naught when the fraud is made to appear. But there would be no security in titles acquired at judicial sales if the rights of a bona fide purchaser, without notice, could be overthrown by subsequent proof that the judgment was obtained by fraud, or that the record, which showed a due service on the defendant, was in fact false. The repose of titles, and indeed every consideration of public policy, demands that a purchaser at a judicial sale, without notice, under proceedings regular on their face, and by

a Court of competent jurisdiction, should be protected as against mere errors of the Court, and against secret vices in the proceedings founded on fraud, accident, or mistake, and which can only be made to appear by the proof of extrinsic facts not appearing on the face of the record. No prudent person would purchase at a judical sale, if he incurred the hazard of losing his money, in case it afterwards should be made to appear that the judgment was obtained by perjury or other fraudulent practices, or that the record on which he relied, as proving a service on the defendant, was in fact false. These propositions are too familiar to require the citation of authorities in their support, and we have been referred to none which appear to contravene them, unless it be two cases decided by the Supreme Court of Iowa. (*Hansby* v. *Blackman*, 20 Iowa, 188; *Bryant* v. *Williams*, 21 Iowa, 329.) The principle settled in those cases is, that a defendant in an action, who was not a resident of the State, and was not served with process by publication or otherwise, and for whom an attorney without authority had entered an appearance, might afterwards, on proof of these facts, recover the property sold under the judgment from a bona fide purchaser, without notice.

It is unnecessary, for the purposes of this case, to examine the reasoning on which these decisions are founded. But if the peculiar facts of those cases should take them out of the general rule to which I have adverted, it would only prove that the rule, in its broadest sense, is not wholly without an exception, and would not impugn the rule itself. If an unauthorized appearance by an attorney, for a non-resident defendant, who was not served with process, can be afterwards shown to invalidate the title of a bona fide purchaser without notice, at the execution sale, it stands, so far as I am aware, as a solitary exception to the general rule, and the doctrine ought not to be further extended. I am, there-

fore, of opinion that it is not competent for the plaintiff to establish by proof *dehors* the record that there was in fact no service of the summons in this case, or that the judgment was obtained by fraud. This brings us to the question whether the record in the tax suit discloses on its face any want of jurisdiction in the Court to render the judgment under which the property was sold. The return of the Sheriff on the summons shows that it was served by posting a copy on the land, and that Dinnicke, the personal defendant, was not found; but the judgment recites that it appeared to the Court "summons herein was issued in proper form by the Clerk of this Court, and was served as required by law upon each of said defendants, who have made default." In *Hahn* v. *Kelly*, 34 Cal. 402, we decided that a recital of this character in the judgment was, in effect, an adjudication by the Court as to the sufficiency of the service, and that it was conclusive on that point, in a collateral attack on the judgment, unless it affirmatively appeared, from some other part of the judgment roll, that the recital was untrue. We further held, that the fact that there appeared in the judgment roll a summons with a return upon it, showing a defective service, or no service at all, was not sufficient to overcome the effect of the recital in the judgment. But the plaintiff claims that the rule there laid down is applicable only when the judgment is offered in evidence, in a collateral action, and has no application to a direct proceeding to set aside the judgment, as this is claimed to be. But as against a stranger, who purchases at an execution sale without notice, the judgment is no more open to attack than it would be if offered in evidence in a collateral action. In each case the validity of the judgment must be tested by the record alone, and not by extrinsic facts. If it be conceded that the facts alleged in this complaint would be sufficient to vacate the judgment in a direct proceeding for that purpose against the

plaintiff in the original action, it by no means follows that
the same result would ensue as against a stranger who pur-
chased at the execution sale without notice, whose rights are
not to be affected by proofs *dehors* the record; and the
record in this case shows the due service of process.   But
the judgment is also assailed on the ground that it orders
the land to be sold, not only for the tax which was specifi-
cally assessed upon it and the improvements, but also for the
personal property tax assessed to Dinnicke, and which could
not become a lien on the land until after the judgment was
docketed, which was long after the plaintiff purchased.
This was unquestionably an error for which the judgment
might have been reversed on appeal; but it does not affect
the validity of the judgment and render it wholly void.   It
was only an error of the Court in determining the amount of
the specific lien on the land, and a judgment is not void
because it is for a larger amount than the proofs justify
(*Murdock* v. *De Vries*, 37 Cal. 527), nor is an execution void
because it is for a larger amount than the judgment author-
ized.

I am, therefore, of opinion that the judgment, execution,
and the sale thereunder to the defendant Kennedy, are valid.
The plaintiff, however, contends that if all this be conceded,
Kennedy acquired no title as against the plaintiff, who pur-
chased the property without either actual or constructive
notice of the pendency of the action.   The complaint alleges
and the demurrer admits that no notice of *lis pendens* was
filed, and that the plaintiff had no actual notice of the pen-
dency of the action.   But in this class of cases a notice of
*lis pendens* is unnecessary.   By the third section of the Rev-
enue Act of May 17th, 1861, it is provided that "every tax
levied under the provisions or authority of this Act is hereby
made a lien against the property assessed, which lien shall
attach on the first Monday in March in each year, and shall

not be satisfied or removed until the taxes are all paid, or the property has absolutely vested in a purchaser, under a sale for taxes;" and by section forty-four of the same Act, it is provided that when a judgment is rendered, to enforce a lien for taxes, "such judgments, rendered in the District Court, shall be docketed and become liens upon all the property against which judgment is rendered, from the date of such assessment, and against all other real estate of the person assessed, subject to execution, for the amount of any judgment against him, from the time of such docketing, as in other civil cases." The effect of these provisions is: First, that the assessment creates a lien upon the real property assessed, which is not extinguished until the tax is paid, or the property is sold to a purchaser, under the proceedings to enforce the tax; second, that when a judgment is rendered for enforcing the payment of the tax, the lien of the judgment, by operation of law, relates back to and takes effect from the date of the assessment. The precise object of these provisions was to subordinate to the lien of the judgment all rights acquired by purchasers intermediate the assessment and the rendition of the judgment.

The assessment of lands, and the lien which it creates, are public matters of record, of which all purchasers are bound to take notice; and when a purchaser buys land which is subject to an existing lien for taxes, he must see at his peril that the taxes are paid; and if he neglects this duty he takes the hazard of a judgment against the land, the lien of which, by operation of law and by relation, will antedate his purchase. If the rule were otherwise, it would be necessary in an action to foreclose a tax lien to bring in as defendants all purchasers and incumbrancers subsequent to the assessment and prior to the commencement of the action, and the effect of the judgment in a large number of cases would be practically defeated by secret unrecorded conveyances which

were unknown to the District Attorney. It was to obviate the necessity for this, that these provisions were intended, making the judgment lien take effect by relation from the date of the assessment. No notice of *lis pendens* is therefore necessary in this class of actions.

Judgment affirmed.